IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NORTHPORT HEALTH SERVICES OF
ARKANSAS, LLC d/b/a PARIS HEALTH
AND REHABILITATION CENTER; NHS
MANAGEMENT, LLC; NORTHPORT
HEALTH SERVICES, INC.; and
SENIOR CARE PHARMACY, INC.                                          PLAINTIFFS

v.                                Case No. 2:12-CV-02284

COMMUNITY FIRST TRUST COMPANY, as
Successor Personal Representative of the Estate
of HATTIE M. STEPHENS, Deceased, and on
Behalf of the Wrongful Death Beneficiaries of
HATTIE M. STEPHENS                                                  DEFENDANT

**OPINION AND ORDER**

Plaintiffs Northport Health Services of Arkansas, LLC d/b/a Paris Health and Rehabilitation Center; NHS Management, LLC; Northport Health Services, Inc., (collectively the "Northport Plaintiffs") and Senior Care Pharmacy, Inc. filed this diversity action to compel arbitration of a dispute currently pending in the Circuit Court of Logan County, Arkansas. Before the Court are a motion for summary judgment and supporting documents filed by the Northport Plaintiffs (Docs. 29-31). Separate Plaintiff Senior Care Pharmacy, Inc. has also filed a motion for summary judgment and supporting documents (Docs. 32-34), in which it adopts the motion, legal arguments, and factual assertions made by the Northport Plaintiffs. For the sake of brevity, the Court's discussion herein will refer to the pending motions for summary judgment as a single motion. Defendant has filed a response in opposition (Doc. 35) and supporting documents (Docs. 36-37), to which the Northport Plaintiffs have replied (Doc. 38). The matter is now ripe for consideration.

## I. BACKGROUND

Plaintiffs filed this action to compel arbitration of a dispute between the parties that is currently pending in the Circuit Court of Logan County, Arkansas. The dispute arises out of treatment received by Hattie M. Stephens during her residency at Paris Health and Rehabilitation Center (the "Facility"). The asserted basis to compel arbitration is an agreement to arbitrate found in the admission documents executed in connection with Stephens's admission to the Facility.

Stephens was a resident at the Facility from May 17, 2010 to October 17, 2010. On the date of her admission, Stephens and her daughter, Debra Dauernheim, signed an admission agreement (the "Agreement"). On the signature page, there are three independent sections for acceptance of terms. The first section is to be signed by the "Resident," the second section is to be signed by the "Responsible Party," and the third section is to be signed by a representative of the Facility. On the first page, the Agreement provides:

> [I]n this Agreement "you" and "your" refers to the person who wishes to become a resident at the Facility. Your Responsible Party is your legal guardian, if one has been appointed, or your Attorney-in-Fact, if you have executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for your health, care, and maintenance.

(Doc. 6-3, p. 1). Stephens signed the Agreement as the "Resident," and Dauernheim signed as her "Responsible Party." The Agreement includes 15 sections describing the various terms of the contract. Section 8 is entitled "Dispute Resolution Program, Arbitration Agreement, and WAIVER OF JURY TRIAL (Read Carefully)." It provides:

> This Agreement creates a dispute resolution program (the "Program") which shall govern the resolution of any and all claims or disputes that would constitute a cause of action in a court of law that Facility may have now or in the future against you or any of your representatives, or that you or any of your representatives may have

>    now or in the future against the Facility . . . or that any other person
>    may have arising out of the residency.

(Doc. 6-3, p. 10). The Program covers disputes including, but not limited to, "claims for breach of contract or promise (express or implied); tort claims; and claims for violation of any federal, state, local, or other governmental law, statute, regulation, common law, or ordinance." *Id.* Under the Agreement, "[a]ll Disputes covered under the Program between you and the Facility shall be resolved by binding arbitration." *Id.* In several instances, the Agreement highlights the fact that parties are specifically waiving their rights to a jury trial, including the following:

>    <u>THE PARTIES ACKNOWLEDGE THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THEY ARE GIVING UP THEIR RIGHT TO HAVE ANY SUCH DISPUTE IN A COURT OF LAW BEFORE A JUDGE OR JURY, AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION.</u>

*Id.*(formatting in original). The Agreement goes on to describe the arbitration procedure in detail. On the final page before the signature lines, the Agreement sets forth the following:

>    By your execution of this Agreement and/or acceptance of service at the Facility, you and Responsible Party acknowledge, understand and agree that this Agreement includes a dispute resolution program for all claims and disputes between you and the Facility (except for monetary claims involving less than <u>$25,000</u>) covered by the Program (as previously defined herein); that all such claims and disputes will be resolved by binding ARBITRATION; that ARBITRATION is a complete substitute for traditional litigation; and that you and your Responsible Party waive your right to file a lawsuit in regard to a Dispute and to have any Dispute heard in a court by a judge or jury.
>    You and your Responsible Party further acknowledge that you have had an opportunity to question a representative of the Facility concerning the terms of this Admission Agreement and the contents of the Handbook and that any questions you had have been answered to your satisfaction.

*Id.* at p. 17.  Also, attached as Appendix D to the Agreement is a document entitled "CONSENT OF RELATED PARTIES TO DISPUTE RESOLUTION PROGRAM, ARBITRATION AGREEMENT, AND WAIVER OF JURY TRIAL" (hereinafter the "Arbitration Consent Form").  The Arbitration Consent Form is signed by Stephens as the Resident and Dauernheim as the Responsible Party. Under Section 15 of the Agreement, the appendices "are specifically incorporated into this Agreement, and are a part of this Agreement."  *Id.* at p. 16.

On May 3, 2012, Dauernheim filed suit in state court in her capacity as Personal Representative of Stephens's estate and on behalf of the wrongful death beneficiaries, asserting claims for negligence, medical negligence, and violation of the Arkansas Long Term Care Resident's Rights Statute against Plaintiffs.  Plaintiffs subsequently filed the instant action in this Court, seeking to compel arbitration of the claims asserted by Defendant[1] in state court.  Defendant answered the complaint, denying the existence of a valid arbitration agreement and asserting illegality, lack of jurisdiction, and unconscionability as affirmative defenses.  Plaintiffs now contend that they are entitled to summary judgment because both Stephens and Dauernheim signed the arbitration agreement, it is a valid and enforceable agreement, and the underlying claims are within its scope.

## II.    STANDARD OF REVIEW

The standard of review for summary judgment is well established.  Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] After Dauernheim's death, Community First Trust Company was substituted as the plaintiff in the state court action and Defendant in the instant action.

The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). When the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## III.  DISCUSSION

In their motion, Plaintiffs contend that they are entitled to summary judgment because the claims asserted by Defendant in the state court action are within the scope of and subject to a valid arbitration agreement. They argue that the Agreement is valid and enforceable against Defendant because Stephens was competent when she signed the Agreement, or alternatively, because Stephens was a third-party beneficiary of the Agreement. In advancing their position that the Agreement is valid, Plaintiffs rebut the defenses of unconscionability and illegality, as asserted by Defendant in answering the complaint. In response to Plaintiffs' motion, Defendant argues that the Agreement is invalid or unenforceable because Stephens was incompetent at the time she signed, and

Dauernheim lacked the authority to bind Stephens to the contract. Defendant also asserts that although Dauernheim was a party to the Agreement, she was not a party to the agreement to arbitrate, and therefore Stephens cannot be subject to arbitration as a third-party beneficiary.

As a preliminary matter, the Court will address the issue of jurisdiction. In Defendant's answer (Doc. 19), response to Plaintiffs' statement of facts (Doc. 37), and pretrial disclosures (Doc. 39), Defendant advances an argument regarding the Court's jurisdiction over this matter. Specifically, Defendant argues that Plaintiffs have not proven that jurisdiction is proper under the Federal Arbitration Act ("FAA"). The FAA compels judicial enforcement of arbitration agreements in any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. When one party to an arbitration agreement fails or refuses to arbitrate and there is an independent basis for federal subject matter jurisdiction, the party seeking to enforce the agreement may petition a United States District Court to compel arbitration. 9 U.S.C. § 4.

The Court finds that it has subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332(a)(1), as Plaintiffs properly alleged complete diversity and the requisite amount in controversy. The Court further finds that the Agreement clearly evinces a transaction involving commerce, as its terms describe the purchase and provision of prescription medications and other supplies, and it explicitly states that "[t]he parties acknowledge that Facility regularly engages in transactions involving interstate commerce and that the services provided by Facility to you involve such interstate commerce." (Doc. 6-3, p. 12). Therefore, jurisdiction is proper, and the Agreement is subject to the FAA.

In assessing whether to compel arbitration under the FAA, courts are limited to determining: (1) whether a valid agreement to arbitrate exists; and, if it does, (2) whether the particular dispute

between the parties falls within the terms of that agreement. *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007); *Pro Tech Indus. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) ("By its terms, the FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original). "These two determinations are guided by a liberal federal policy favoring arbitration agreements." *Diversicare Leasing Corp. v. Cooper*, 2013 WL 1791048, at *3 (W.D. Ark. Apr. 26, 2013) (quotation omitted). In addition, "[a]rbitration is strongly favored in Arkansas as a matter of public policy and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion." *Pest Mgmt., Inc. v. Langer*, 250 S.W.3d 550, 556 (Ark. 2007) (citation omitted). As Defendant does not argue that Plaintiffs' claims in the state court action are outside the scope of the arbitration agreement, the Court need only determine whether a valid agreement to arbitrate exists.

The validity of an arbitration agreement is determined by state contract law. *Cooper*, 2013 WL 1791048, at *3. As Arkansas is the forum state and the Agreement was executed in this State, Arkansas contract law controls the issue of validity. *Casteel v. Clear Channel Broad., Inc.*, 254 F. Supp. 2d 1081, 1088 (W.D. Ark. 2003). "Under Arkansas law, the essential elements of a contract or an agreement are: (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations." *Showmethemoney Check Cashers, Inc. v. Williams*, 27 S.W.3d 361, 366 (Ark. 2000). In the context of an arbitration agreement, courts should seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself, resolving any doubts and ambiguities in favor of arbitration. *Showmethemoney*, 27 S.W.3d at 365. Here,

Defendant challenges the validity of the agreement to arbitrate on grounds that it lacks "mutual agreement by competent parties." (Doc. 36, p. 7).

Defendant has declined to advance any arguments concerning illegality or unconscionability, as previously raised in its answer and as discussed and analyzed in Plaintiffs' motion. As the party seeking to avoid arbitration, Defendant has the burden of proving any affirmative defenses raised in objecting to the viability or applicability of the agreement to arbitrate. *See, e.g.*, *Madol v. Dan Nelson Auto. Group*, 372 F.3d 997, 999 (8th Cir. 2004) ("A party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration") (internal quotation omitted); *Pro Tech Indus.*, 377 F.3d at 873 ("the party seeking to avoid the arbitration provision has the burden of proving an arbitration provision is unconscionable"). The Court finds that Defendant has failed to meet its burden of showing that there is a genuine dispute as to whether the agreement to arbitrate is invalid due to either illegality or unconscionability. Furthermore, in failing to advance any other arguments that might otherwise be available, Defendant voluntarily abandoned the other defenses raised in its answer. *See Pelfresne v. Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (citations omitted) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.").

Defendant stakes everything on attempting to persuade the Court that the agreement to arbitrate is invalid because it lacks "mutual agreement between competent parties" (Doc. 36, p. 7). Defendant's arguments regarding lack of mutual agreement and lack of competent parties depend on the Court adopting Defendant's novel construction of the arbitration provisions at issue. Accordingly, the Court must first address Defendant's proposed construction of the Agreement.

In an effort to avoid third-party beneficiary analysis, Defendant urges the Court to construe the arbitration provisions and the rest of the Agreement as two separate contracts. Defendant argues that the terms of the agreement to arbitrate—section 8—only contemplate Stephens and the Facility as parties because they do not specifically mention the Responsible Party. Defendant contends that the Responsible Party is therefore not bound by the agreement to arbitrate. Keeping in mind that Defendant argues Stephens lacked any contractual capacity, Defendant essentially argues that sections 1–7 and 9–14 form a contract to which Dauernheim and the Facility are bound, section 8 is not part of a valid contract at all, and the Court should ignore section 15 and Appendix D, the Consent to Arbitrate Form.

The Court rejects Defendant's construction outright as inconsistent with the express terms of the Agreement and Arkansas law. The Eighth Circuit has summarized the three well-established principles of Arkansas contract law to be applied when construing an instrument:

> [T]he primary rule in the construction of instruments is that the court must, if possible, ascertain and give effect to the intention of the parties. Arkansas law requires courts to look to the contract as a whole and the circumstances surrounding its execution to determine the intention of the parties. Second, in construing any contract, Arkansas courts must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain, ordinary meaning. Third, different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible. A construction that neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions.

*Smith v. Arrington Oil & Gas, Inc.*, 664 F.3d 1208, 1212–1213 (8th Cir. 2012) (quotations and citations omitted).

Defendant's piecemeal construction of the Agreement is a creative one, but it completely disregards the terms of the Agreement itself and asks the Court to apply the complete opposite of

the principles enumerated above. The Court is required to analyze the language of the contract as a whole. In doing so, the Court must first determine what constitutes the "whole" contract. Here, the whole contract consists of the entire Agreement—all sections—together with the attached and incorporated appendices.[2] The Court cannot ascertain whether Defendant's failure to address the Arbitration Consent Form was a purposeful omission or an oversight, but in any case, the omission is fatal to Defendant's argument that the Responsible Party is not legally bound by the agreement to arbitrate. The Arbitration Consent Form—which was signed by Stephens in her capacity as Resident and Dauernheim in her capacity as Responsible Party—provides:

> CONSENT TO ARBITRATION AND WAIVER OF JURY TRIAL
> (Read Carefully)
>
> BY EXECUTING THIS ARBITRATION AGREEMENT, THE PARTIES ACKNOWLEDGE THEIR UNDERSTANDING AND AGREEMENT THAT ALL DISPUTES WILL BE RESOLVED BY BINDING ARBITRATION, THAT ARBITRATION IS A COMPLETE SUBSTITUTE FOR TRADITIONAL LITIGATION, AND THAT THEY ARE GIVING UP AND WAIVING THEIR RIGHTS TO HAVE THEIR DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY.
>
> By my signature and/or acceptance of services of the Facility, I hereby consent to the Dispute Resolution Program, Arbitration Agreement, and Waiver of Jury Trial (the "Program"), set forth in Section 8 of the Admission Agreement for [Hattie Stephens] (name of Resident) to which this consent is attached. I further represent and warrant that I have read and understand the Program; that I have been advised that it will affect my legal rights and the legal rights of the

---

[2] Even if the appendices were not explicitly incorporated by section 15, they would still be construed as part of the whole contract because they were executed at the same time and as part of the same transaction as the Agreement. *See Smith*, 664 F.3d at 1213 ("Under Arkansas contract law, multiple documents executed as part of a single transaction generally will be construed together as a single contract.") (citing *W.T. Rawleigh Co. v. Wilkes*, 121 S.W.2d 886, 888 (Ark. 1938)).

>Resident; and that I have been given an opportunity to seek advice
>legal from counsel concerning the Program.

(Doc. 6-3, p. 28) (emphasis in original). This unambiguously states that the signatories agree to be bound by the Program. In light of the above, the Court finds that the agreement to arbitrate is one of the terms of the contract executed by Stephens, Dauernheim, and the Facility. The Court further finds that the Agreement is valid as between Dauernheim and the Facility, and Dauernheim is bound to the agreement to arbitrate.

The Court will now consider Defendant's specific arguments. Defendant is challenging the validity of the arbitration agreement based on the lack of two elements: competent parties and mutual agreement. Defendant makes two contentions in support of its argument that the agreement is invalid for lack of competent parties: (1) Stephens lacked contractual capacity; and (2) Dauernheim lacked authority to bind Stephens to the Agreement. The Court assumes Defendant's third contention, that Defendant is not bound as a third-party beneficiary to the arbitration provisions, relates to the claim that the Agreement is invalid for lack of mutual agreement. Each contention will be addressed in turn.

First, Defendant argues that Stephens was incompetent at the time she signed the Agreement, and therefore no contract was formed. Because Plaintiff argues that Stephens was competent, the issue of Stephens's competence is disputed by the parties. However, to survive summary judgment, Defendant must show that a genuine dispute of *material fact* exists, and this Defendant fails to do.

"A fact is material only when its resolution affects the outcome of the case." *Cooper*, at *2 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). Resolving the issue of Stephens's competence will not affect the outcome of the case because even if Stephens were incompetent at the time of signing, she would still be bound as a third-party beneficiary of the

-11-

Agreement between Dauernheim and the Facility. This is discussed in detail below. Thus, while Defendant is correct that there is a genuine dispute as to Stephens's competence, Defendant is incorrect in asserting that this is sufficient to defeat Plaintiffs' motion.

The Court next considers Defendant's argument that Dauernheim was not authorized to sign the Agreement on behalf of Stephens. A significant portion of Defendant's response is devoted to denying "Mrs. Dauernheim's purported authority to bind her mother to arbitration." (Doc. 36, p. 13). However, the Court cannot find any evidence in the record that indicates Dauernheim, in signing the Agreement as the "Responsible Party," was attempting to sign the agreement on her mother's behalf. This is not a case where a third party signed a two-party contract on behalf of one of the contracting parties. As discussed above, it is clear that Dauernheim signed on her own behalf as the Responsible Party. It is in this capacity that Dauernheim executed the Agreement, and under these circumstances, the question of whether Dauernheim was authorized to sign on behalf of Stephens is not dispositive.

The remaining argument appears to relate to Defendant's assertion that the Agreement is invalid because it lacks "mutual agreement." The "mutual agreement" element concerns whether the parties objectively manifested their assent to the contract through words or conduct. *Barnard v. Townsquare Media, LLC*, 2013 WL 1755581, at *2 (W.D. Ark. Apr. 24, 2013). The issue is whether Stephens is bound to arbitration as a third-party beneficiary of the Agreement between Dauernheim and the Facility.

This Court has previously applied the third-party beneficiary analysis to enforce an arbitration agreement against a nursing home decedent's estate where a valid arbitration agreement existed between the responsible party and the facility. *See Northport Health Servcs. of Ark., LLC*

*v. Rutherford*, No. 07-5184 (W.D. Ark. Mar. 17, 2009) (order granting plaintiffs' motion for summary judgment and finding that resident's estate was bound as a third-party beneficiary to an arbitration agreement between nursing home and resident's responsible party) (Doc. 6-4). Defendant argues that *Rutherford* is neither persuasive nor instructive here, because the "distinction between the parties to the arbitration agreement and the Admission Agreement and the narrow scope of the arbitration agreement (affecting only disputes between the resident and the Facility) were not argued before the *Rutherford* court." (Doc. 36, p. 23). Defendant's argument against application of the third-party beneficiary doctrine is entirely dependent on the Court adopting Defendant's construction of the contract, which it has already declined to do. Defendant also attempts to persuade the Court that *GGNSC Omaha Oak Grove, LLC v. Payich* is instructive as to application of the third-party beneficiary analysis, but the Court finds *Payich* distinguishable. In that case, the nursing home resident's son signed the arbitration agreement as the resident's durable power of attorney. However, the conditions precedent to his power of attorney taking effect were not met. Importantly, he did not sign the agreement in his individual capacity, and therefore there was no valid agreement to which third-party beneficiary analysis could apply. Like in *Rutherford*, and unlike in *Payich*, a valid agreement to arbitrate exists in the instant case. Accordingly, third-party beneficiary analysis applies.

For Defendant to be bound to arbitration as a third-party beneficiary, three elements must be met: (1) Stephens was not a party to the contract; (2) a valid contract existed between the Facility and Dauernheim in her individual capacity; and (3) the contract between the Facility and Dauernheim was made for Stephens's benefit. *See Cooper*, 2013 WL at *5. For purposes of this

analysis, the Court will assume—without finding—that Stephens lacked capacity to contract.[3] Therefore, the only question is whether the Agreement was made for the benefit of Stephens. The Agreement defines the Responsible Party, in part, as the person "who agrees to assist the Facility in providing for [the Resident's] health, care, and maintenance." (Doc. 6-3, p. 1). Furthermore, "[t]he Responsible Party represents to the Facility that he or she manages, uses, directs or controls the funds or assets which may be used to pay for Resident's Facility chargers and/or that he or she tends to make decisions for or otherwise act on behalf of Resident." *Id.* This language indicates that Dauernheim, by voluntarily signing the contract as the Responsible Party, entered the Agreement for the purpose of assisting the Facility in providing for her mother's health, care, and maintenance. Thus, the Court finds that Defendant[4] is bound as a third-party beneficiary to the Agreement.

## IV.  CONCLUSION

In sum, the Court finds that Defendant's opposition to the pending motion fails to provide sufficient grounds to deny summary judgment, raising no genuine dispute of material fact. The Court further finds that a valid agreement to arbitrate the underlying dispute between the parties exists, and the dispute between the parties is within the broad scope of that agreement. That being the case, the Court will direct the parties to proceed to arbitration of that dispute in accordance with

---

[3] If Stephens was competent at the time of signing, then Defendant would be directly bound by the terms of the Agreement.

[4] The Court notes that Defendant in this case is representative of not only the Estate of Stephens, but also Stephens's wrongful death beneficiaries. In *Rutherford*, the defendant was only the decedent's estate. However, the Arkansas Supreme Court recently ruled that a decedent's wrongful death beneficiaries are bound by an arbitration agreement executed by the decedent. *Searcy Healthcare Ctr., LLC v. Murphy*, 2013 Ark. 463 (Ark. 2013) (unpublished) (noting that "because the wrongful-death claim is derivative, the wrongful-death beneficiaries have the same limitations as the decedent would if the decedent brought the claim, and are bound by the agreements entered into by the decedent involving the decedent's claims").

the terms of the arbitration provisions in the Agreement. The Court does not, however, find it either necessary or appropriate to enjoin the action pending in the Circuit Court of Logan County, Arkansas. Principles of comity counsel against such action. The Court fully expects, however, that Defendant will refrain from pursuing those claims that are subject to the complaint to compel arbitration.

IT IS THEREFORE ORDERED that Plaintiffs' motions for summary judgment (Docs. 29 and 32) are GRANTED IN PART and DENIED IN PART. The motions are GRANTED insofar as they seek to compel arbitration, and the Court hereby directs the parties to proceed to arbitration of their dispute in accordance with the arbitration provisions of the Agreement. The motions are DENIED insofar as they seek to enjoin proceedings between the parties in the Circuit Court of Logan County, Arkansas. Plaintiffs' complaint to compel arbitration (Doc. 6) is hereby DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that all other pending motions in this action are DENIED AS MOOT.

IT IS SO ORDERED this 21st day of January, 2014.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE